In the Matter of CANDY LANE
CORPORATION, Bankrupt.

Lawrence SARF, Trustee in bankruptcy
of Candy Lane Corporation, Plaintiff,

v.

Shirley LEFF, Semel, Patrusky &
Buchsbaum, Patrusky & Weinstein,
Philip Hurt and Gilbert Schneider, De-
fendants.

Bankruptcy No. 79 B 685.

United States Bankruptcy Court,
S.D. New York.

March 29, 1984.

**572**

John J. Preefer, P.C., New York City, for trustee.

Hyman Bravin, New York City, for Shirley Leff; Melvin Hirshowitz, New York City, of counsel.

Leon C. Marcus, P.C., New York City, counsel to trustee.

### DECISION ON MOTIONS TO DISMISS TRUSTEE'S COMPLAINT AND FOR SUMMARY JUDGMENT.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in bankruptcy of Candy Lane Corp. ("Candy Lane"), seeks to set aside an interest in a condemnation award asserted by Shirley Leff ("Leff") by exercising the strong-arm power bestowed upon the trustee under section 70(c) of the former Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 (codified as amended at 11 U.S.C. § 110 (1976)) (repealed 1978). Leff claims that part of the condemnation award presently held by the trustee never became property of the bankrupt estate because Candy Lane gave to her an absolute assignment of the expected funds. The trustee contends that no outright assignment was made; rather, the purported assignment created only a security interest in the condemnation award securing a prior obligation that Candy Lane owed Leff. Wielding his strong-arm power provided by Act § 70(c), the trustee aims to strike down this security interest claiming that since it remained unperfected as of the filing of the petition, it must yield to the trustee's hypothetical lien creditor status. Additionally, the trustee questions whether the document by which Candy Lane transferred its "right, title and interest in and to any award ... made or to be made to the Assignors for the taking of the premises designated as # 109–129 Columbia Street, Hudson, New York" actually conveyed any interest in the award granted to Candy Lane which was based, as Leff concedes, upon the taking of only trade fixtures [1] to the real property.

---

1. The trustee claims that the award to Candy Lane was based upon the taking of fixtures and personal property. Trustee's Complaint ¶ 11. The judgment issued by the state court confirming a settlement of the condemnation proceeding awards Candy Lane $687,754, plus interest, as the value of its trade fixtures condemned. No mention is made of personal property. Accordingly, the fund held by the trustee will be deemed to consist only of proceeds received for the fixtures.

## FACTS

Candy Lane and its two principals, Seymour Newman ("Newman") and Raymond Ducorsky ("Ducorsky"), owned real estate and a building in which they conducted manufacturing operations in Hudson, New York in 1972. Newman and Ducorsky owned the land and building, while Candy Lane, the tenant, owned the trade fixtures. On September 25, 1972, the County Court of Columbia County entered an order of condemnation vesting title to the property in the Hudson Urban Renewal Agency ("HURA") and appointing Commissioners of Appraisal. Ten years later, after bankruptcy had intervened, a judgment was entered in the condemnation proceeding awarding Newman and Ducorsky $79,535.25 for the taking of the land and building, and awarding for the taking of Candy Lane's trade fixtures the sum of $780,078.91.

On April 19, 1979, while the condemnation proceeding was pending, Candy Lane filed a petition under section 322 of Chapter XI of the Bankruptcy Act, (repealed 1978). On May 21, 1982, the arrangement proceeding was terminated, Candy Lane was adjudicated a bankrupt and a trustee was appointed. The trustee placed the $780,078.91 in an escrow account where it remains subject to claims asserted against the fund and less previously authorized payments of administrative claims totalling approximately $250,000.

The dispute between the trustee and Leff arises from a series of pre-petition loans which Leff made to Candy Lane. The trustee does not dispute the following four loans which Leff made: $40,000 on January 20, 1977; $43,000 on January 13, 1978; $28,000 on January 30, 1978; and $20,000 on March 15, 1978. Candy Lane gave a note to Leff evidencing the $131,000 indebtedness on March 15, 1978. The note was due on March 15, 1979 with a one year renewal option.

On March 21, 1978, Ducorsky, Newman and Candy Lane executed the following document:

KNOW ALL MEN BY THESE PRESENTS,

That RAYMOND DUCORSKY, residing at 42 Pleasant Ridge, Poughkeepsie, New York, and SEYMOUR NEWMAN, residing at 12 Hook Road, Poughkeepsie, New York, and CANDY LANE CORPORATION, a domestic corporation, with its principal place of business at 134 North Hamilton Street, Poughkeepsie, New York, hereinafter referred to as the "Assignors", for and in consideration of the sum of ONE ($1.00) DOLLAR, and other good and valuable considerations, receipt whereof is hereby acknowledged, have, jointly and severally, sold, assigned, transferred and set over unto SHIRLEY LEFF, residing at 1530 Palisades Avenue, Fort Lee, New Jersey, hereinafter referred to as the "Assignee", so much of their right, title and interest in and to any award as amounts to ONE HUNDRED THIRTY–ONE THOUSAND AND 00/100 ($131,000.00) DOLLARS, plus interest on said amount of 6% per annum, made or to be made to the Assignors for the taking of the premises designated as #109–129 Columbia Street, Hudson, New York, Section E 12, Block 206, Lots 2, 3, and/or any advance payment made to the Assignors, in a proceeding entitled "State of New York against Seymour Newman, Raymond Ducorsky and Candy Lane Corporation."

The said assignee is hereby authorized and empowered to execute, acknowledge and deliver any and all receipts, releases and instruments that may be required for the collection of so much of said award as amounts to One Hundred Thirty-one Thousand and 00/100 ($131,000.00) Dollars, plus interest thereon at 6% per annum hereby assigned and to do any and all things toward the collection of said award and/or any advance payment made to the Assignors, as said Assignors might or could do if these presents had not been made.

This assignment is made subject to the fees of SAMUEL GOLDSTEIN & SONS, ESQS., of 217 Broadway, New York, New York 10007, as attorneys for the

above Assignors in the above mentioned proceeding, and for all disbursements incurred in connection therewith.

Raymond Ducorsky
Seymour Newman
CANDY LANE CORPORATION
By: Raymond Ducorsky

Nathaniel Rubin ("Rubin"), who was apparently the attorney for Ducorsky, Newman and Candy Lane, sent the note and a copy of the purported assignment to Leff with a cover letter dated March 29, 1978. The letter stated:

Dear Mrs. Leff:

Enclosed please find original note of $131,000.00 executed by Candy Lane Corporation, Raymond Ducorsky and Seymour Newman to you, together with Assignment of Rents executed by Seymour Newman and Raymond Ducorsky, as collateral security for said note, together with the Assignment of Condemnation Award in Hudson, *as further security* for the payment of said note. We have filed the original assignment of the condemnation award with Urban Renewal.

Please acknowledge receipt of these documents.

Very truly yours,
Nathaniel Rubin

(emphasis added)

Rubin sent the original assignment to HURA for filing along with a letter which stated in part:

Enclosed please find Assignment of Condemnation Award executed by Raymond Ducorsky, Seymour Newman and Candy Lane Corporation to Shirley Leff, for the above described property.

Leff seizes upon the language in this letter as well as the document itself as evidence that there was an unqualified assignment made to her. Under this theory, the funds would never have been part of the bankrupt estate under Act § 70(a). Her argument that the assignment was absolute and not intended as security for repayment of the loans is somewhat tempered by an order to show cause which Leff filed on January 3, 1984. This application seeks an order

determining that the claim of the aforesaid SHIRLEY LEFF in the sum of $131,000, plus interest at 6% per annum, *is secured* by the entire proceeds of the aforesaid condemnation award received by the Trustee for the taking of the premises designated as 109–129 Columbia Street in Hudson, New York, [and] *that the secured creditor SHIRLEY LEFF has a lien upon said proceeds* . . . .

(emphasis added). Leff also described herself as a creditor of Candy Lane with a secured interest in the condemnation award in her proof of claim filed March 9, 1982.

After Leff made the above application to the court, the trustee commenced an action on January 13, 1984 seeking to have Leff's asserted lien declared void and invalid against the trustee and an order to the effect that her claim does not attach to the condemnation proceeds. The trustee's position is that the parties intended only to create a security interest and that Leff's failure to perfect her interest by filing a proper financing statement renders it invalid under Act § 70(c).

The principals of Candy Lane have taken diametrically opposed positions in their affidavits which they submitted to the court. Newman states that the assignment was intended to give security to Shirley Leff for the March 15, 1978 advance of $20,000, that Candy Lane was solvent at the time and if the company had a good year, Leff could have been fully paid and the assignment would have been returned to Candy Lane. Ducorsky, who is Leff's brother, refutes Newman's description of the transaction and claims that "it was understood and agreed that the principal of [Leff's] loans to CANDY LANE CORPORATION would be paid and satisfied ... in the first instance from the condemnation award."

Leff has moved to dismiss the trustee's complaint or, in the alternative, for summary judgment and an order that the trustee pay to Leff $131,000 of the escrowed condemnation award.

## DISCUSSION

The trustee disputes that Leff obtained any interest in the condemnation award by virtue of her assignment from Candy Lane. Candy Lane owned only the condemned fixtures, and the compensation it received from HURA was based solely upon that interest. Since the assignment transferred Candy Lane's right to the proceeds for the taking of the premises and was silent as to fixtures, the trustee reasons that Leff has no claim to any of the condemnation fund. Finally, the trustee points to other assignments made by Candy Lane which specifically stated that an interest in the proceeds awarded for fixtures was being transferred.

■ The trustee's interpretation of the assignment cannot be sustained on either factual or legal grounds. As a party to the assignment, Candy Lane transferred its right, title and interest in the condemned premises. Since Candy Lane possessed no interest in the land or building, it could only have been conveying its right to the compensation awarded for trade fixtures. This was the only right, title and interest in the award that was assignable by Candy Lane.

Additionally, as a matter of law, Candy Lane transferred its interest in the award to Leff. For the purposes of a condemnation proceeding, fixtures to the land, whether or not they are removable, are deemed a part of the realty at the time of the taking. *See In re City of New York (Allen St.)*, 256 N.Y. 236, 246, 176 N.E. 377, 378 (1931). "An appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures." *Jackson v. State*, 213 N.Y. 34, 36, 106 N.E. 758, 758 (1914) (Cardozo, J.). Therefore, the assignment did not have to specify the proceeds from the fixtures because under New York law they were automatically included in the award for the taking of the premises. That Candy Lane may have particularized "fixtures" in assignments other than the one it made to Leff does not alter this conclusion.

■ Having determined that Candy Lane transferred part of its interest in the condemnation proceeds, it must be determined whether the transfer constituted an absolute assignment. To decipher a security agreement from an absolute assignment is often a difficult task. As one district court describes this gray area, "it is difficult to find an easy rule for determining when a transaction is one involving an assignment or contract for security purposes and when there is an absolute assignment." *In re Boughner*, 8 U.C.C.Rep.Serv. (Callaghan) 144, 149 (W.D.Mich.1970). This court in the past has noted that no particular phraseology is required to effect an assignment. All that is required is that the property must be sufficiently identifiable and there must be an intent to assign a present right in the subject matter of the assignment, divesting the assignor of all control over that which is assigned. *In re Moskowitz*, 14 B.R. 677, 681 (Bkrtcy.S.D.N.Y. 1981) (citations omitted).

■ A document which is seemingly an absolute assignment on its face may nevertheless be treated as a security agreement in certain instances. Section 1–201(37) of the Uniform Commercial Code defines a security interest as "an interest in personal property or fixtures which secures payment or performance of an obligation." N.Y.U.C.C. § 1–201(37) (McKinney Supp. 1983–1984). Professor Gilmore has written that the definition of "security interest" offered by the U.C.C. "is essentially a declaration of faith." 1 G. Gilmore, Security Interests in Personal Property § 11.1, at 334 (1965). The broad language used by the drafters recognizes "that the courts will determine the true nature of a security transaction, and will not be prevented from exercising their function of judicial review by the form of words the parties may have chosen." *Id.* § 2.6, at 47.

Thus, in *Levin v. City Trust Co. (In re Joseph Kanner Hat Co., Inc.)*, 482 F.2d 937, 939 (2d Cir.1973), also involving a bankruptcy trustee's action under Act § 70c, the Second Circuit Court of Appeals

construed an assignment of a relocation payment absolute on its face to be no more than a security agreement. Writing for the court, Judge Friendly focused on the simultaneous exchange of the assignment for a loan to the assignor; testimony that payments received under the assignment would be used to reduce the indebtedness; that if payments were made on the loan from the borrowers any surplus received under the assignment exceeding the amount of the loan would be returned to the assignor; that the lender treated the assignment as a method of repayment on the loan; and that the assignment was a means of repayment if the borrowers did not make payments in concluding that "[i]f this was not an assignment for security, we do not know what would be." *Id.* at 940. Since the disguised security interest was not perfected by the assignee, the trustee in bankruptcy of the assignor was able to retain the relocation fund for the benefit of the bankrupt estate.

■ Without discussing whether the scope of Article 9 of the U.C.C. extended to an assignment of a relocation payment to impose perfection requirements, the *Kanner* court held *sub silentio* that Article 9 applied to the transaction. Indeed, it was the lender's failure to file a financing statement that allowed the trustee to set aside the security interest. 482 F.2d at 940. This result was correct because § 9–106 of the U.C.C. extends the provisions of Article 9, including its perfection requirements, to general intangibles including "things in action." A right to a condemnation award falls within the category of general intangibles as the court elucidated in *Kapp v. United States*, 20 U.C.C.Rep.Serv. (Callaghan) 1355, 1357 (N.D.Ill.1976):

> We think it is clear that the debtor's right to a relocation payment, which accrued at the time of the condemnation judgment, is personal property and a "thing in action" within the meaning of § 9–106. It was obviously the intention of the drafters of the Uniform Commercial Code to include as a "general intangible" any intangible asset which had not been specifically defined or excluded in some other section of the code, in order to make financing statements as attractive and secure as feasible.... A similar decision under the Uniform Commercial Code appears in *In Re Joseph Kanner Hat Co., Inc.*, 482 F.2d 937 [12 U.C. C.Rep. 1242] (2d Cir.1973), where the assignee of the relocation fund had failed to perfect its interest by filing a financing statement.

■ The Candy Lane transfer to Leff contains certain characteristics of an assignment. The document sufficiently identifies the property and demonstrates an intent to assign a present interest. Candy Lane's then unliquidated award for the condemned fixtures was an assignable present interest. *See In re Holt*, 28 A.D.2d 201, 205, 284 N.Y.S.2d 208, 212 (3d Dept.1967). However, an issue remains whether Candy Lane divested itself over all control of the $131,000 of condemnation proceeds. Hence, the assignment executed by Candy Lane, absolute on its face, may still be found to be a security interest. *See In re Joseph Kanner Hat Co., Inc.*, 482 F.2d at 940; *accord Wambach v. Randall*, 484 F.2d 572, 575–76 (7th Cir.1973).

■ Under section 9–102 of the U.C.C., the intent of the parties governs whether a particular document or transaction creates a security interest. *Hassett v. Revlon, Inc. (In re OPM Leasing Services, Inc.)*, 23 B.R. 104, 115–16 (Bkrtcy.S.D.N.Y. 1982); N.Y.U.C.C. § 9–102 comment 1 (McKinney 1964). As is true with an assignment, no formal wording is required to establish a security agreement. The determination should be based upon an examination of the substance of the documents in the context of the surrounding transaction. *See, e.g., Looney v. Nuss (In re Miller)*, 545 F.2d 916, 918 (5th Cir.), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977); *cf. Lyon v. Ty-Wood Corp.*, 212 Pa.Super. 69, 72, 239 A.2d 819, 820–21 (1968) (court "must examine the business activities, the objectives and the relationship of the parties to ascertain [their] intent and on that basis determine whether

the transactions in question legally constitute an absolute assignment or a security interest"). However, it is incumbent upon the party challenging the assignment to show by clear and convincing proof that only a security interest was intended. *See Cross v. A.G.V. Associates, Inc.*, 340 F.2d 42, 44 (2d Cir.1964), *cert. denied*, 381 U.S. 913, 85 S.Ct. 1535, 14 L.Ed.2d 434 (1965).

On August 9, 1982, Leff filed a proof of claim with this court in which she stated that she received "the assignment of condemnation award as security for my loan," and that "I have a secured interest in the amount of $131,000...." Again, in her application to the court made shortly before the trustee commenced this action, Leff sought an order declaring that her claim of $131,000 is secured by the condemnation award. It appears that until the trustee challenged her secured status under Act § 70(c), Leff had always considered herself a secured creditor, not an assignee of Candy Lane. The legal posture adopted by Leff in this court is not dispositive of this issue, although it tends to rebut the presumption that the assignment was absolute. The same can be said about Rubin's letter of March 29, 1978 describing the assignment "as further security." Additionally, the timing of the transfer and the amount of the assignment as compared to the loans made by Leff indicate that a security interest was created.

Weighing against this result is Ducorsky's claim that Leff was to be repaid from the condemnation award as a primary source, and only if that fund proved to be insufficient, then from secondary sources including the personal guarantees of Candy Lane's principals. This argument might be supported by a showing that Candy Lane was insolvent at the time the assignment was executed. Whether this assignment was absolute or intended as security presents a triable issue of fact which cannot be disposed of by summary judgment. *See Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1319 (2d Cir.1975); *see also Aetna Casualty & Surety Co. v. Giesow*, 412 F.2d 468, 471 (2d Cir.1969) ("Where contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment would be improper.") (citation omitted).

ACCORDINGLY, Leff's motions to dismiss the trustee's complaint and for summary judgment are denied.